UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
JAMES ROBINSON,
                                    :

                    Plaintiff,        REPORT & RECOMMENDATION
                                    :

          -against-                 05 Civ. 8826 (GEL)(MHD)
                                    :

THE CITY OF NEW YORK et al.,
                                    :

                    Defendants.
------------------------------x
ROBERT PARRIS,
                                    :

                    Plaintiff,
                                    :

          -against-                 05 Civ. 8830 (GEL)(MHD)
                                    :

THE CITY OF NEW YORK et al.,
                                    :

                    Defendants.
------------------------------x
JEFFERY DAVIDSON,
                                    :

                    Plaintiff,
                                    :

          -against-                 05 Civ. 8833 (GEL)(MHD)
                                    :

CORRECTION OFFICER MASIEY et
al.                                 :

                    Defendants. :
------------------------------x
VINCENT McALLISTER,
                                    :

                    Plaintiff,
                                    :

          -against-                 06 Civ. 1805 (GEL)(MHD)
                                    :

THE CITY OF NEW YORK et al.,
                                    :

                    Defendants.
------------------------------x

1

```
-----------------------------x
KEITH McFADDEN,
                           :
              Plaintiff,
                           :
         -against-                06 Civ. 1828 (GEL)(MHD)
                           :
THE CITY OF NEW YORK et al.
                           :
              Defendants.
-----------------------------x
HARRY WILSON,
                           :
              Plaintiff,
                           :
         -against-                06 Civ. 7777 (GEL)(MHD)
                           :
THE CITY OF NEW YORK et al..
                           :
              Defendants.
-----------------------------x
```

TO THE HONORABLE GERARD E. LYNCH, U.S.D.J.:

In this Report and Recommendation we address dismissal motions in six lawsuits filed in 2005 and 2006 by inmates in the Anna M. Kross Center ("AMKC") of the Rikers Island prison facility. The plaintiffs -- James Robinson, Robert Parris, Jeffery Davidson, Vincent McAllister, Keith McFadden and Harry Wilson -- have each sued a group of AMKC correctional officers who work in the prison commissary. They have also named as defendants both Brian Riordan, who is the Warden of the AMKC, and Martin Horn, who is the Commissioner of the New York City Department of Correction ("DOC"). In addition, all but one of the plaintiffs -- the exception being Jeffery Davidson -- have named the City of New York as a defendant.

The complaints of all plaintiffs but Davidson are almost identically worded, and his original complaint substantially parallels those of his fellow inmates. Each of the plaintiffs asserts claims against the City and the DOC officials and employees for the denial of his First and Fourteenth Amendment right, as an observant Muslim, to practice his religion. The alleged violation that is common to all of the complaints is the failure of the defendants to provide meals that conform to the requirements of the plaintiffs' Muslim faith.

Defendants have filed parallel motions in each case, seeking, under Fed. R. Civ. P. 12(b)(6), the dismissal of the complaints in their entirety. In support of each of those motions, they press some or all of five grounds: (1) that the complaint fails to state a claim because the plaintiff's allegations demonstrate that he has not exhausted his prison remedies, as required by 42 U.S.C. § 1997e(a); (2) that the plaintiff lacks standing to assert one of his claims, which is based on the prison's alleged sale of non-Halal food at its commissary; (3) that his claims against the individual defendants should be dismissed because he fails adequately to allege the defendants' personal participation in the constitutional torts that he asserts; (4) that the claims against these defendants should be dismissed because, based on the allegations of the complaint, the individual defendants are immune

from liability; and (5) that the complaint fails to state a claim insofar as it targets certain practices at the prison commissary, because its allegations do not plead a violation of plaintiff's rights under the Free Exercise Clause of the First Amendment.

A. Plaintiffs' Claims

These lawsuits are among a group of approximately twenty cases filed more or less contemporaneously by current or former Muslim inmates at the Rikers Island prison facilities, all of whom complain about the handling of food and related items at the prison dining halls. All allege that the New York City Department of Correction has failed to provide them with meals that comply with the Halal requirements of their faith, and has thereby denied them the free exercise of their religion, in violation of their First and Fourteenth Amendment rights.

These lawsuits were originally filed pro se, and hence their factual allegations lack some degree of precision, although, fairly construed, it is apparent that the plaintiffs are all complaining of essentially the same practices. As reflected in the original and amended complaints in these six cases, plaintiffs allege that prison personnel have failed to provide proper Halal meals to Muslim inmates -- themselves included -- in a variety of ways.

These include the stacking and washing together of Halal and non-Halal trays, the use of soap in the washing process that contains pork by-products, the use of pork-based ingredients in the cooking process, the failure to cook Halal meats thoroughly, the failure to separate the Halal from the non-Halal utensils, food pans and carts, and the failure to identify the Halal utensils and other kitchen items.[1] (See Robinson Am. Compl. at pp. 5-a to 5-d, 5-D1, 5-f to 5-h; Parris Am. Compl. at fifth page to ninth page, eleventh page, twelfth page; Davidson Am. Compl. at fifth page; McAllister Am. Compl. at fifth to eighth pages, tenth to twelfth pages; McFadden Am. Compl. at fifth to eighth pages, tenth to twelfth pages; Wilson Compl. at pp. 3-A to 3-D, 3-F to 3-H). They also target the manner in which food items are sold at the AMKC commissary, alleging that the defendant corrections officers sell both Halal and non-Halal foods but fail to identify which are Halal, a practice that ultimately results in the contamination of the Halal food trays at the prison dining facilities. (See Robinson Am. Compl. at pp. 5-a to 5-c, 5-D1, 5-h, 6; Parris Am. Compl. at fifth page to seventh page, twelfth page, p. 6(a); Davidson Compl.

---

[1]The Robinson complaint contains the most specific allegations regarding the failure to properly segregate Halal and non-Halal foods, detailing the preparation and handling of the food by non-Muslim kitchen staff in close proximity to the preparation of non-Halal meals, as well as the failure to use separate transport wagons or separate compartments within transport wagons to bring Halal meals to the housing unit. (See Robinson Am. Compl. at 5-D1).

at ¶ II(D); Davidson Am. Compl. at ¶ II(D) & fifth page; McAllister Am. Compl. at fifth to tenth pages, twelfth page; McFadden Compl. at fifth to tenth pages, twelfth page; Wilson Compl. at ¶ II(D), pp. 3-A to 3-F, p. 3-H).

Each plaintiff further states that he filed grievances with the AMKC and that there was no response to those grievances. (Robinson Am. Compl. at p. 3; Parris Am. Compl. at p. 3; Davidson Compl. ¶¶ IV(E) & (F); McAllister Am. Compl. at third page; McFadden Am. Compl. at third page; Wilson Compl. at pp. 3, 4, 5). The plaintiffs also allege that the Warden and the Commissioner were notified of these problems, and that they themselves notified both of these officials. (Robinson Am. Compl. at pp. 5-f, 5-I; Parris Am. Compl. at eighth page, thirteenth page, pp. 6(a) & 7(a); Davidson Compl. ¶¶ IV(F)(3), (G), (I); McAllister Am. Compl. at fifth, tenth and thirteenth pages; McFadden Am. Compl. at fifth, tenth and thirteenth pages; Wilson Compl. at pp. 3-A, 3-F, 3-I, 4-5 & Exs.).

We read these plaintiffs' allegations liberally in deference to their pro se status, e.g., Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994), as well as because defendants seek dismissal under Rule 12(b)(6). E.g., Achtman v. Kirby, McInerney & Squire, LLC, 464 F.3d

328, 337 (2d Cir. 2006). We infer that, except where plaintiffs make additional allegations, they are asserting the same claims and in substance making the same allegations, as the pro se plaintiffs in the parallel cases. Moreover, we read their pleadings in light of the specific allegations made by the one plaintiff among this group who subsequently obtained representation by pro bono counsel -- a set of allegations that are described in Wesley v. Muhammad, 2008 WL 123812 (S.D.N.Y. Jan. 10, 2008).

As explained in Wesley, the claims in these cases concern two different sets of practices that are said to violate the rights of Muslim inmates. One set concerns the alleged failure of the prison facilities to adhere to Islamic religious tenets in food preparation and cleanup in the prison dining facilities. These failings, which assertedly also violated a DOC directive, involved the stacking and washing together of trays that are used to serve Halal and non-Halal meals, thereby contaminating the trays reserved for Halal food[2]; the washing of trays with soap that contains pork by-products; use of cooking ingredients with pork by-products; and

---

[2] According to the Wesley complaint, the DOC dining facilities color-code the trays, with one color designating trays for Halal food and another for non-Halal food. Wesley, 2008 WL 123812 at *1. This separation is apparently done to avoid what would otherwise be possible contamination of the Halal food if it were placed on trays that have previously been used to carry non-Halal food. It also identifies to serving personnel whether the inmate wants Halal food.

7

the failure to cook Halal meats thoroughly, as required by Halal rules. Id. at *1, 11. See also Randolph v. City of New York Dep't of Correction, 2007 WL 26602082, *2 (S.D.N.Y. Sept. 7, 2007). The other principal violation, according to Wesley, is that the prison commissaries sell both Halal and non-Halal food products without identifying which products are in fact non-Halal, a failing that, according to Wesley, leads to Muslim inmates unknowingly purchasing non-Halal food products at the commissary and then placing those products on the dining hall food trays that are reserved for Halal foods, thereby contaminating the trays for those inmates and for all other observant inmates who subsequently use the same trays. Wesley, 2007 WL 123812 at *1, 5.

As for the role of the defendants named in these six lawsuits, plaintiffs allege that the corrections officers all work at the prison commissary and are thus responsible for the sale of non-Halal food items without identification of their non-Halal status, thus resulting in food tray contamination. (See Robinson Am. Compl. at pp. 5-a, 5-d to 5-f, 5-i; Parris Am. Compl. at ninth to tenth pages, twelfth page; Davidson Compl. ¶ II(D); McAllister Am. Compl. at fifth page, eight to ninth pages, thirteenth page; McFadden Am. Compl. at fifth page, eighth to ninth pages, thirteenth page; Wilson Compl. at pp. 3, 3-B, 3-D to 3-F, 3-I). They further assert that the Commissioner and the Warden have been repeatedly notified

of the cited failures to provide proper Halal meals and the sale of unidentified non-Halal foods at the commissary, and that they have failed to act to correct these problems. (See Robinson Am. Compl. at pp. 5-a, 5-f, 5-i; Parris Am. Compl. at p. 5-a, eighth page, thirteenth page; Davidson Compl. ¶¶ IV(F)(3), (G)-(I); McAllister Am. Compl. at fifth page, thirteenth page; McFadden Am. Compl. at fifth page, thirteenth page; Wilson Compl. at pp. 3-A, 3-F, 3-I).

As reflected in the reports and recommendations we issued in three of the parallel cases, the allegations in these six cases concerning the individual defendants' personal involvement track those found in the previously decided cases. The correction officers named as defendants in those other cases were alleged to have been assigned to work at the prison commissary, and the supervisory defendants -- in those cases the DOC Commissioner and the Warden of the AMKC -- were named because they had been notified of the problems alluded to in those parallel cases and had allegedly failed to respond or deal with those problems. See, e.g., Wesley, 2008 WL 123812 at *2, 6-7; Randolph, 2007 WL 26602082 at *2; Mason v. Masley, 06 Civ. 1829 (GEL), Report & Recommendation at 5-6 (S.D.N.Y. Feb. 11, 2008).

Apart from these common food-related claims, five of the six complaints now under review contain a handful of other claims, none

of which is addressed by the defendants' various dismissal motions. Plaintiffs Robinson, McAllister, Parris, McFadden and Wilson all allege that Muslim inmates face several forms of discrimination in seeking to worship. They assert that unlike other prisoners of other faiths, Muslim inmates are searched when they go to religious services, and that they have to pray in the gym because the prison does not supply a mosque for <u>Jumu'ah</u> prayer.[3] (<u>Robinson</u> Am. Compl. at 5-g to 5-h; <u>McAllister</u> Am. Compl. at eleventh to twelfth pages; <u>Parris</u> Am. Compl. at eleventh to twelfth pages; <u>Wilson</u> Compl. at twelfth to thirteenth pages; <u>McFadden</u> Am. Compl. at eleventh to twelfth pages). They also allege that Muslim inmates returning from court are denied both disposable and specifically Halal trays. (<u>Robinson</u> Am. Compl. at 5-g; <u>McAllister</u> Am. Compl. at eleventh page; <u>Parris</u> Am. Compl. at eleventh page; <u>Wilson</u> Compl. at twelfth page; <u>McFadden</u> Am. Compl. at eleventh page).

The remaining atypical claims are found in the amended complaint of Jeffery Davidson. He asserts that he was denied some form of payment owed him by the prison, that on one occasion he was

---

[3] <u>Jumu'ah</u> is a Friday congregational prayer "'comparable to the Saturday service of the Jewish faith and the Sunday service of the various Christian sects'" in its centrality to the Islamic faith. <u>O'Lone v. Shabazz</u>, 42 U.S. 342, 360 (1987) (Brennan, J., dissenting) (quoting <u>Shabazz v. O'Lone</u>, 595 F. Supp. 928, 930 (D. N.J. 1984.

not given needed medical attention, and that at one point he was subjected to a public strip search. (Davidson Am. Compl. at fifth and sixth pages).

B. Defendants' Motions

_____In defendants' various motions, they press some or all of five grounds for dismissal, all predicated on what defendants contend are fatal deficiencies in the complaints.[4] First, they assert that the complaints fail to state a claim because their allegations reflect that plaintiffs did not exhaust their prison administrative remedies. Second, they argue that the plaintiffs lack standing to assert a claim based on the sale of non-Halal food items at the prison commissary, asserting that the complaints do not suggest that the plaintiffs unknowingly bought and consumed such items. Third, defendants argue that plaintiffs do not adequately allege the personal participation of the defendants in the wrongdoing about which they are complaining. Fourth, they assert that they are protected from liability by a qualified-immunity defense. Fifth, they urge that the allegations of the complaints do not state a

---

[4] As is the case in the parallel lawsuits by other Rikers Island inmates, the only evidence proffered by defendants is a copy of the DOC regulations that govern the procedures for filing and pursuing inmate grievances. (See Decls. of Ass't Corp. Counsel Kimberly Conway, executed May 7, 2007, Ex. A, in Robinson, Parris, Davidson, McFadden and Wilson; Conway Decl., executed April 16, 2007, Ex. A, in McAllister).

claim for violation of the plaintiffs' First Amendment right to the free exercise of their religion.

Of the six plaintiffs, three -- Parris, Davidson and Wilson -- have filed skeletal opposition papers. Read liberally, they seem simply to contest the merits of the defendants' arguments in support of dismissal. The other plaintiffs have not responded.

<u>ANALYSIS</u>

We address defendants' arguments in the order in which they make them. Because these arguments repeat in large measure the analysis that these and other defendants have made in previously decided dismissal motions in parallel Rikers Island cases,[5] we will shorten our discussion, incorporating by reference or citation the assessments that we have made of these arguments in the earlier decisions.

A. <u>The Exhaustion Defense (Asserted Against<br>All Plaintiffs Except Wilson)</u>

In plaintiffs' complaints they all allege that they attempted to utilize the prison grievance system to air each of the claims

_____

[5] Defendants here are represented by the same counsel as in the other cases.

12

that they make here. They also say that they did not receive a response to their grievances, and that they further notified the supervisory defendants, including the Commissioner and the Warden, again without response. These allegations are consistent with the assertions of those plaintiffs in the parallel cases whose exhaustion status has also been challenged by defendants and adjudicated by this court.

The short answer to defendants' argument, as we have previously observed, is that a plaintiff is not obliged to allege his compliance with the exhaustion requirements of the Prison Litigation Reform Act, and that it is the defendants' burden both to plead this affirmative defense and to prove its applicability. The somewhat longer answer is that in any event (a) the allegations in these plaintiffs' complaints to which defendants seem to point as the basis for their argument do not clearly demonstrate that the plaintiffs failed to comply with the exhaustion requirement and (b) if they complied incompletely, the complaints do not preclude the application of one or more of the exceptions to complete exhaustion recognized by the Second Circuit (if, for example, corrections personnel prevented or interfered with an inmate's efforts to exhaust his remedies or simply ignored his grievance). See, e.g., Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004). For further details of this analysis, we incorporate by reference our

discussion of these issues found in <u>Wesley v. Muhhamad</u>, 2008 WL
123812 at *3-4; <u>Randolph v. City of New York Dep't of Correction</u>,
2007 WL 2660282 at *4-9; <u>Robinson v. New York City Dep't of
Correction</u>, 06 Civ. 945 (GEL), R&R at 5-17. <u>See</u> <u>also</u> <u>Mason v.
Commanding Officer Masley</u>, 06 Civ. 1829 (GEL), R&R at 8-9; <u>Rose v.
Correction Officer Masiey</u>, 06 Civ. 464, 05 Civ. 8828, 8829 (GEL),
Report & Recommendation at 9-11 (S.D.N.Y. Feb. 19, 2008)).

    B. <u>The Standing Defense (Asserted Against
       All Plaintiffs Except Davidson)</u>

Defendants next focus on the allegations of five of the
plaintiffs concerning the failure to identify non-Halal food
products sold at the AMKC commissary. They argue that these
plaintiffs lack standing to press this claim since they do not
suggest that they ever erroneously purchased and consumed non-Halal
products from the commissary.

Of the five targeted plaintiffs, one -- Mr. Robinson --
alleges that he purchased and partly consumed some non-Halal food
from the commissary. (Robinson Am. Compl. at p. 5-D1). Although the
other plaintiffs do not state that they consumed non-Halal items
purchased unknowingly from the commissary, we read their
allegations and claims in light of the specific allegations in the
<u>Wesley</u> complaint that the unknowing purchase of non-Halal items at

the commissary by observant Muslim inmates leads to contamination of the trays upon which supposedly Halal meals are served, thus injuring subsequent users of these trays. See Wesley, 2008 123812 at *1, 5. Indeed, the targeted plaintiffs here appear to allege the same basic facts, that is, that other Muslim inmates unknowingly purchase non-Halal food products at the commissary and then place those foods on the Halal trays, thereby contaminating them for future users. (See Wilson Am. Compl. at pp. 3, 3A; Parris Am. Compl. at fifth to sixth pages; McAllister Am. Compl. at fifth to sixth pages; McFadden Am. Compl. at fifth to sixth pages).

It bears mention that the same standing defense was invoked by the defendants in Randolph, and we upheld it there. See Randolph, 2007 WL 2660282 at *9-10. The reason for that result was that we understood  Randolph's claim to be simply that Muslim inmates were misled into purchasing and consuming non-Halal foods, and we concluded that Randolph lacked standing because he failed to "allege, or even hint, that he has ever unknowingly purchased a pork product from the commissary, much less consumed it, and his allegations -- in which he references specific products sold at the commissary that he asserts contain pork or pork by-products [cite omitted]-- strongly indicate that he is aware of which commissary items his religious beliefs preclude him from using." Id. at *9.

By contrast, in <u>Wesley</u> plaintiff's counsel made clear that the claim concerning the commissary was based on the assertion that observant inmates other than the plaintiff who mistakenly purchase pork products at the commissary then place those food items on the purportedly Halal trays at the dining facility, thus contaminating those trays. Since all plaintiffs allege that the Halal trays are not properly washed, it follows that this claim is based on injury to all Muslim inmates -- the various plaintiffs included -- since even if they do not buy non-Halal foods at the commissary, they all use the Halal trays and hence are exposed to the pork contamination assertedly caused by the challenged commissary practices. <u>See</u> <u>Wesley</u>, 2008 WL 123812, at *5-6, 12.

Reading plaintiffs' pleadings in light of <u>Wesley</u>, we conclude that they allege sufficient facts to form a basis for finding that they are claiming to have been injured by virtue of the contamination of the Halal trays in the manner described, whether through their own purchase of non-Halal food or through the consumption of non-Halal commissary items by other observant Muslim inmates. <u>Accord</u>, <u>e.g.</u>, Rose R&R at 13 & n. 6. That suffices to allege injury to plaintiffs and hence standing.

C. <u>Pleading of Defendants' Roles (Asserted Against
   All Plaintiffs)</u>

Defendants next assert that the plaintiffs have each failed to specify the personal responsibility of the individual defendants for the wrongs about which the plaintiffs complain. As we have noted, a plaintiff is required to plead and prove such personal involvement. <u>See</u>, <u>e.g.</u>, <u>Randolph</u>, 2007 WL 2660282, at *10 (citing <u>inter</u> <u>alia</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 152-53 (2d Cir. 2007); <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 394 (2d Cir. 1997)). Given plaintiffs' status as <u>pro</u> <u>se</u> litigants and their fairly specific allegations of personal involvement of the individual defendants, we conclude that their pleadings pass Rule 12(b)(6) muster on this point.

Like the complaints in <u>Randolph</u>, <u>Wesley</u> and <u>Mason</u>, plaintiffs in these cases refer to the individually named corrections officers as having worked at the prison commissary and having either participated in or allowed the sale of non-Halal food products without providing any list or other means for Muslim inmates to identify which foods were non-Halal. (<u>Compare</u> <u>e.g.</u>, <u>Wesley</u> Second Amended Compl. at ¶¶ 6(h)-(n), 37-42, 44-45). For reasons discussed at length in <u>Randolph</u> and <u>Wesley</u>, we conclude that these plaintiffs' allegations against these officers, which parallel those found in those two cases, sufficiently allege the correction

17

officers' participation in the identified practices at the commissary that plaintiffs assert have violated their right to the free exercise of their religion. <u>See</u> <u>Wesley</u>, 2008 WL 123812 at *4-9; <u>Randolph</u>, 2007 WL 2660282 at *10-12. <u>Accord</u> Rose R&R at 14.[6]

As for the supervisory defendants named by plaintiffs -- DOC Commissioner Horn and Warden Riordan -- defendants again contend that their responsibility for the wrongs alleged by plaintiffs is insufficiently identified in the six complaints. This argument is also a repeat of arguments made in <u>Randolph</u> and <u>Wesley</u>, and we reject defendants' contentions for the same reasons.

Apart from alleging the defendant supervisors' respective institutional positions, plaintiffs assert that they notified the

---

[6] We note that the one plaintiff who pleads in somewhat different form from the others is Mr. Davidson. In his original complaint he follows in general terms the format of the other pleadings by specifying that each defendant correction officer had engaged in the sale of non-Halal products and then in his amended complaint he alleges the sale of, and failure to identify, the non-Halal products (Davidson Compl. at ¶ II(D)); Davidson Am. Compl. at ¶ II(D) & fifth page), although in that second pleading he does not mention the previously identified correction officer defendants and instead lists as defendants some John Does and Jane Does, apparently in connection with an unrelated set of allegations concerning a failure to provide him proper medical treatment. (<u>See</u> <u>id.</u> ¶ I at pp. 1-2, third page, fifth page). Given plaintiff's <u>pro</u> <u>se</u> status and the nature of his allegations in the two pleadings, we interpret the "Amended Complaint" liberally as in the nature of a supplemental pleading, adding some new allegations and claims, rather than as an amended pleading that entirely supercedes the plaintiff's original complaint.

Warden and Commissioner (among others) about the problems, and they allege as well in substance that these officials did nothing to correct the situation. From these allegations, we may infer -- based on the rather flexible standard that applies to complaints targeted by a Rule 12(b)(6) motion and the still more liberal test that applies to the pleadings of an untutored pro se litigant -- that plaintiffs are alleging that the Commissioner and the Warden failed to correct constitutional violations of which they had actual notice, were grossly negligent in managing subordinates in this respect, and displayed deliberate indifference to the plaintiffs' First Amendment right to practice their religion. Such allegations suffice to state a claim for supervisory liability. See, e.g., Randolph, 2007 WL 2660282 at *10 (citing inter alia Iqbal, 490 F.3d at 152-53).

In any event, Commissioner Horn and Warden Riordan were also named as defendants in Randolph and in Wesley, and the complaints in those cases plainly illustrate the nature of the responsibility that plaintiffs here are attributing to these senior officials of the DOC for the complained-of practices in both the prison commissary and the dining facility. For the reasons noted in both Randolph and Wesley, plaintiffs' allegations adequately plead supervisory liability on the part of these defendants. See id. at

*11-12; <u>Wesley</u>, 2008 WL 123812 at *7-9.[7]


    D. <u>Immunity Defense (Asserted Against</u>
       <u>Against All Plaintiffs)</u>


Defendants next seek to invoke a qualified-immunity defense on behalf of all of the individual defendants, and in doing so they rely solely on the allegations of the complaints. Plaintiffs' allegations closely parallel those in the <u>Randolph</u> and <u>Wesley</u> cases, and we conclude that the immunity defense applies here in the same manner as it does in those other cases with the exception of its application to some of the correction-officer defendants.


In <u>Wesley</u> and <u>Randolph</u>, we concluded that immunity was properly invoked to absolve the correction-officer defendants of liability. We inferred that their inclusion as defendants was based solely on their work at the commissary, a role that could not

---

[7] We have noted that five of the plaintiffs also allege that inmates returning from court are denied Halal meals, a claim that defendants do not explicitly address. In any event, plaintiffs have standing to assert this claim, since they allege that at one point they were pre-trial detainees (Robinson Compl. at 5-f; McFadden Am. Compl. at tenth page; McAllister Am Compl. at tenth page; Parris Compl. at eighth page; Wilson Compl. at 3-F), and hence it may be inferred that on one or more occasions they were taken to court and then denied a Halal meal. Plaintiffs do not allege the specific responsibility of any one defendant for this apparently systemic failing, but since they represent that they notified the Warden and the Commissioner of the problems concerning which they are now complaining, we infer that these officials are appropriately named defendants on this claim as well.

trigger liability since (1) there was no reason for them to have believed that the sale of non-Halal products at the commissary violated any inmate's rights, and (2) their only stated role involved selling products at the commissary or supervising inmates in those sales, a function that offers no basis for inferring that they had any control over whether the commissary provided identification of which food products were non-Halal. See Randolph, 2007 WL 26660282 at *13-14; Wesley, 2008 WL 123812 at *12.

This reasoning applies to plaintiff Davidson's complaint and amended complaint as well, in which he merely alleges that the correction-officer defendants worked in the commissary during his incarceration and sold items containing pork or pork by-products. (See Davidson Compl. at ¶ II(D), Davison Am. Compl. at ¶ II(D) and fifth page). Thus, we recommend that Davidson's commissary claims against the correction officer defendants in his case -- that is, Correction Officers Masley, Brown, Santaluna, Allen and Gerris (sued as Gerrigs) -- be dismissed.

In contrast, the other plaintiffs all allege that "[a]ll the CORRECTION OFFICER'S are [l]ist[ed], [b]ecause they all got [n]otice from the[ir] [s]upervis[o]r about the [v]iolation[]s and [s]till [co]ntinue to [s]ell [p]ork in the [c]ommissary . . . ." (Robinson Am. Compl at p. 5-i; Parris Am. Compl. at thirteenth

page; McAllister Am. Compl. at thirteenth page; McFadden Am. Compl. at thirteenth page; Wilson Compl. at p. 3-I). We liberally construe these allegations to indicate that the correction-officer defendants were told by one or more supervisors that the sale of items containing pork and pork-by products without notifying observant Muslim inmates that they are non-Halal violates the constitutional or statutory rights of those inmates. We further infer that plaintiff is alleging that the officers were instructed to cease that practice but did not do so. In light of these allegations, and in contrast to Wesley and Randolph, we conclude that a trier of fact could find that the correction-officer defendants had reason to believe that their actions were constitutionally suspect or otherwise unlawful. Thus, immunity cannot be granted to them at this stage on the commissary claim. See Rose R&R at p. 18.

Immunity also cannot be granted to the supervisory defendants on the claims regarding food preparation and washing procedures at the dining facility. As noted in both Randolph and Wesley, settled Supreme Court and Second Circuit precedent and the defendants' presumptive knowledge of Muslim dietary requirements should have made clear to the Commissioner and other senior supervisors that cooking Halal foods with pork-based products, failing to cook Halal meats thoroughly, stacking and washing Halal and non-Halal trays

together and using pork-based soap to wash Halal trays violated the religious tenets of Muslim inmates and therefore violated their right to the free exercise of their religion. See Randolph, 2007 WL 2660282 at *14-16; Wesley, 2008 WL 123812 at *9-12.[8]

Finally, immunity must be denied the supervisory defendants on plaintiffs' commissary claims insofar as they are construed consistently with the equivalent claim in Wesley. As we noted in that case, the plaintiff was alleging that the failure to identify non-Halal food products at the commissary led to the contamination of Halal trays in the dining facility, thus violating the First Amendment rights of Muslim inmates. On that basis and in view of the allegation that the Commissioner and the AMKC Warden knew of the problem and failed to act, we concluded that they could not be granted immunity on this claim based solely on the face of the complaint. Wesley, 2008 WL 123812 at *12. The same result necessarily follows in these cases for the Commissioner and the Warden.

E. Pleading of a Free-Exercise Claim (Asserted Against All Plaintiffs Except Davidson)

Finally, defendants in this case argue that the complaints of

_____

[8] The same may be said for the alleged practice of the Rikers prison facilities in not serving Halal meals to prisoners returning from court.

five of the plaintiffs -- again the exception is Davidson -- fail to allege the elements of a violation of the Free Exercise Clause of the First Amendment insofar as they target the sale of non-Halal food products at the commissary. In substance, they seem to say that the protection of that amendment is limited, in the current context, to the supplying of non-pork food to Muslim inmates in the dining facility and does not extend to the sale of non-Halal products in prison.

As we noted in Randolph, defendants are correct that there is no recognized constitutional right on the part of inmates to preclude the sale of food products that are inconsistent with those inmates' religious scruples, and there is no abstract right to require the listing of non-Halal products at a prison commissary. See Randolph, 2007 WL 2660282 at *13. Nonetheless, defendants' argument is misplaced insofar as it relies on a misstating of the theory underlying plaintiffs' commissary claims. As noted, they are alleging that the failure to list the non-Halal products leads to the mistaken purchase of such products by Muslim inmates and that these inmates then place that food on the Halal trays in the dining facility, thus leading to the contamination of those trays for subsequent observant users. For reasons previously noted in Wesley, 2008 WL 123812 at *10-12, such a claim is at least potentially viable, since it rests on the settled proposition that prisons are

required to supply meals that are consistent with the religious requirements of their inmates. <u>See</u>, <u>e.g.</u>, <u>Cruz v. Beto</u>, 405 U.S. 319, 321-22 (1972); <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 203 (2d Cir. 2004); <u>Ford v. McGuinnis</u>, 352 F.3d 582, 597 (2d Cir. 2003); <u>Benjamin v. Coughlin</u>, 905 F.2d 571, 579 (2d Cir. 1990); <u>Kahane v. Carlson</u>, 527 F.2d 492, 495 (2d Cir. 1975)).

<u>CONCLUSION</u>

_____For the reasons stated, we recommend that defendants' motions to dismiss be granted with respect to the claims against Correction Officers Masiey, Brown, Santaluna, Allen, Gerris and Parris in <u>Davidson v. Correction Officer Masiey #9144</u>, 05 Civ. 8833 (GEL), and that they otherwise be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Gerard E. Lynch, Room 910, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).


**Dated: New York, New York**
**March 5, 2008**


MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Robert Parris
2915 Cruger Avenue
New York, NY 10467

Mr. Harry Wilson
# 05-A-4842
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

Mr. James Robinson
c/o Mr. Milton Virgil
467 East 23rd Street
Apt.#1A
Brooklyn, NY 11226

Vincent McAllister
06-A-4411
Clinton Correctional Facility
P.O.Box 2000
Dannemora, NY 12929

Keith McFadden
06-A-3345
Queensboro Correctional Facility
47-04 Van Dam Street
Long Island City, NY 11101-3081

Keith McFadden
06-A-3345
Watertown Correctional Facility
23147 Swan Road
Watertown, New York 13601-9340

Jeffery Davidson
152A Ellery St. Apt. 1
Brooklyn, NY 11206

Kimberly Conway, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
New York, New York 10007